No. 21,338.

THE STATE OF KANSAS, ex rel. S. M. BREWSTER, as Attorney-general, etc., *Plaintiff*, v. CAREY J. WILSON, as Superintendent of Insurance of the State of Kansas, et al., *Defendants*.

SYLLABUS BY THE COURT.

INSURANCE COMPANIES — *State Tax upon Premiums Received — Proper Method of Computation.* The annual state tax of two per cent upon all premiums received by foreign insurance companies on account of their yearly business in this state, imposed by sections 5177, 5467 and 5468 of the General Statutes of 1915, should be computed upon the total amount of premiums collected, retained and devoted to the business of the insurance companies, but any surplus of premiums not so used, but returned to the policyholders or credited to them as abatements or dividends, should be excluded from the computation.

Original proceeding in mandamus. Opinion filed April 6, 1918. Writ denied.

*S. M. Brewster*, attorney-general, *John L. Hunt*, and *S. N. Hawkes*, assistant attorneys-general, for the plaintiff.

*Robert Stone, George T. McDermott*, and *H. O. Caster*, all of Topeka, for the defendant; *John Barnes*, of Milwaukee, Wis., *F. G. Dunham, William J. Tully*, both of New York, N. Y., and *William C. Craige*, of Philadelphia, Pa., of counsel.

The opinion of the court was delivered by

DAWSON, J.: This is an original action to secure an authoritative interpretation of a statute relating to the taxation of insurance companies. It takes the form of mandamus to require the superintendent of insurance to pay into the state treasury certain moneys exacted by him from the defendant insurance companies, over their protest, pursuant to a debatable construction of section 5467 of the General Statutes of 1915, which reads:

"Every insurance, guaranty and accident company or association not organized under the laws of this state shall, as hereinafter provided, annually pay a state tax upon all premiums received, whether in cash or in notes, in this state, or on account of business done in this state, for insurance of life, property or interests in this state, or guaranty companies, at the rate of two per cent per annum, which amount of tax shall

The State, *ex rel.*, v. Wilson.

be assessed by the superintendent of the insurance department, as here-inafter provided."

Other related provisions of statute read:

"Every such company or association shall, on or before the 15th day of January in each year, make a return, verified by the affidavit of its president and secretary or other chief officers, to the superintendent of the insurance department, stating the amount of all premiums received by said company, whether in cash or notes, in this state, during the year ending on the 31st day of December next preceding. Upon receipt of such returns the superintendent of the insurance department shall verify the same, and assess the taxes upon the various companies on the basis and at the rate provided for in section 1 of this act, and proceed to collect the same from the insurance companies and cover the same into the state treasury." (Gen. Stat. 1915, § 5468.)

"   .   .   .   All insurance companies, partnerships and associations organized under any foreign government engaged in the transaction of the business of insurance in this state, as provided for in this act, shall annually, on or before the first day of March in each year, pay to the super-intendent of insurance two per cent on all premiums received in cash or otherwise by their attorneys or agents in this state during the year ending on the preceding thirty-first day of December, which sum shall be paid, in addition to its other license fees, into the state treasury for the insurance fund.   .   .   ." (Gen. Stat. 1915, § 5177.)

In his answer and return to the alternative writ, the superintendent of insurance says he merely awaits the court's direction and protection in the discharge of his duty. The real defense is made by the insurance companies. Their several answers only differ in details; their main contentions are alike. They say they have no quarrel with the statute, and that pursuant to its terms they pay to the state many thousands of dollars annually; but they claim that the computation of the precise sums due from them is made incorrectly. In substance, each company says it pays the two per cent tax willingly upon the net annual premiums exacted from its policyholders which are retained and used by the company, but each protests against the payment of the tax upon the surplus of the premiums which it returns to the policyholders when it develops at the close of the year's business that a surplus or overcharge of premiums has been collected which is not necessary to the financial demands of the company. One of the defendants illustrates the point thus: To insure its solvency its financial policy has three main factors of safety. First, it assumes that

48—Kan.—1778

its death losses will be higher than the mortality tables of human experience commonly disclose; second, it assumes that its expense of administration, taxation, etc., will be higher than past experience would suggest; and third, that its income from assets, capital, reserves, and the like, will be less than past experience would suggest. On this broad leeway of assumptions, sometimes called "the loading," it fixes the premiums to be exacted from its policyholders, and its contracts of insurance so provide. But when at the close of the year's business it is disclosed that these broad precautions of safety were not necessary, that its business for the year has been normal, and that consequently the exaction of the full amount of premiums contracted for and collected was not necessary, it refunds or abates to its policyholders a part of the premiums—such part as it can spare without injury to its financial safety. It is the state's right to tax such returned or abated portions of the premium moneys which is questioned.

Another of defendants illustrates its contention by exhibiting a table relating to its account with one of its policyholders, whose stipulated premium was $609 per annum. Each year, after the first, part of his premium was returned to him as an abatement, commonly, but not quite accurately, designated as a "dividend." This table reads:

| "Year. | Prem. stipulated in policy. | Dividend. | Amt. paid to company. | Amt. reported subject to tax. |
|---|---|---|---|---|
| 1912 | $609.00 | None. | $609.00 | $609.00 |
| 1913 | 609.00 | $111.70 | 497.30 | 497.30 |
| 1914 | 609.00 | 118.40 | 490.60 | 490.60 |
| 1915 | 609.00 | 125.10 | 483.90 | 483.90 |
| 1916 | 609.00 | 132.00 | 477.00 | 477.00 |
| 1917 | 609.00 | 139.10 | 469.90 | 469.90" |

The question in this case, as applied to the policy in the table submitted, is whether the state's two per cent tax on premiums shall be exacted each year on the sum of $609, the stipulated premium which the company has the right to collect and the right to keep, or upon that amount less the dividend or abatement to the policyholder when, at the conclusion of the business of the year in which it was collected, it was disclosed that the company's financial condition did not require its retention?

With almost an entire unanimity the courts which have had occasion to consider this question have determined that the tax only reaches the sum retained and kept for the company's business and does not apply to such portion of the sum as is returned to the policyholder or abated to his account.  Some of the pertinent dicisions are:  *Mutual Benefit Life Ins. Co. v. Herold,* 198 Fed. 199; 201 Fed. 918; *Connecticut General Life Ins. Co. v. Eaton,* 218 Fed. 188; 223 Fed. 1022; *Mutual Benefit Life Ins. Co. v. Commonwealth,* 128 Ky. 174; *N. Y. Life Ins. Co. v. Chaves, Supt. of Ins.,* 21 N. M. 264, 153 Pac. 303; *Com. of Pa., Appellant, v. Penn. Mut. L. Ins. Co.,* 252 Pa. St. 512; *Com., Appellant, v. Metropolitan L. Ins. Co.,* 254 Pa. St. 510; *New York Life Insur. Co. v. Styles,* 59 Law J. Rep. Q. B., 291.

The case of *German All. Ins. Co. v. Van Cleave,* 191 Ill. 410, is to the same effect, although it related only to the tax on fire insurance premiums.

The case of *Metropolitan Life Ins. Co. v. State,* (Ind.) 116 N. E. 579, is largely at. variance with the prevailing view of the cases cited above.  The court has examined all these cases, but it would unduly extend this opinion to quote from them.

It is a prudent policy which for the time being exacts from the policyholder somewhat more than the estimated amount needed to pay the proper charges on an insurance business. The inherent uncertainties of any business commend such foresight.  But neither the insurance company nor its patrons should be penalized for so doing; and moneys received as premiums but returned because not necessary for premiums should not be taxed as such.  True it is that—

> "He who hopes a faultless tax to see
> Hopes what ne'er was, nor is, nor e'er shall be."

But legislatures do not purposely intend to impose irrational, illogical, or unjust burdens of taxation.  Statutory language imposing an exceptional or irrational burden of taxation should be so clear and unambiguous as to leave no room for debatable interpretations.  It cannot be presumed that the legislature intended that the collection or noncollecton of the premium tax should be governed by a question of bookkeeping, nor on an undue significance to mere words of terminology.

In the answers of the defendant insurance companies, the truth of which are admitted by the pleadings, the moneys upon which the right of taxation is disputed are variously designated as abatements, dividends, surplus, rebates, refunds, excess of tentative or experimental premiums, excess of gross or estimated premiums over net or mathematical premiums, overcharge of premium, difference between estimated premiums and actual cost of insurance, difference between level premium and adjusted losses and costs afterwards determined. The court holds that such moneys not actually devoted as premiums to the business of the insurance company for the current year in which they are collected, but which are returned or otherwise abated or credited to the policyholders' account, are not subject to the two per cent tax exacted upon premiums received during the year under sections 5177 and 5467 of the General Statutes of 1915.

A special question is raised concerning the premium collections of the defendant Metropolitan Life Insurance Company. This company issues industrial policies, calling for payments of a few cents each week. It employs agents at considerable expense to collect these small items. To lessen this expense, its contracts provide that if the policyholder will remit his payments promptly and regularly for one year, an abatement of ten per cent will be awarded him, that being about the cost of collection. This situation is governed by the general rule which we have considered. If the full payments received are retained, the tax thereon should be paid; where it is not retained, but returned or abated to the policyholder's account, the tax is not due thereon.

As to all the defendants, they should pay the tax upon the total sum of premiums which they receive and retain, but the statute does not require them to pay upon the refunded or abated surplus or excess of premiums which is not thus retained.

Writ denied.