No. 36,024

THE STATE OF KANSAS, ex rel. A. B. MITCHELL, as Attorney General, etc., *Plaintiff*, v. CHARLES F. HOBBS, as Commissioner of Insurance, etc.; WALTER E. WILSON, as Treasurer, etc.; and THE NEW YORK LIFE INSURANCE COMPANY, *Defendants*.

(147 P. 2d 721)

Opinion filed April 8, 1944.

*Eldon Wallingford,* assistant attorney general, argued the cause, and *A. B. Mitchell,* attorney general, was on the briefs for the plaintiff.

*George M. Brewster,* of Topeka, argued the cause, and *J. L. Hunt, Lester M. Goodell, Margaret McGurnaghan* and *John H. Hunt,* all of Topeka, were on the briefs for defendant New York Life Insurance Company.

The opinion of the court was delivered by

THIELE, J.: This is an original proceeding in mandamus brought to secure an authoritative interpretation of the statute relating to the taxation of insurance companies. A similar course of practice and procedure was tacitly approved in *State, ex rel., v. Wilson,* 102 Kan. 752, 172 Pac. 41, L. R. A. 1918D, 955.

Briefly stated, the motion for the writ sets forth the status of plaintiff and the various defendants and that defendant New York Life Insurance Company issued policies containing or not containing provisions for waiver of premium, copies of the two types of policies, each issued at age thirty-five in the amount of $10,000, being attached. Summarized, the provision for waiver reads:

"Upon receipt by the Company . . . of due proof . . . that the Insured has become totally disabled . . . the Company will waive the payment of each premium falling due after the commencement of such total disability . . ."

and

"The sum payable in any settlement of this Policy shall not be reduced by premiums waived under the above provisions."

The extra premium required for the provision for waiver of premium under the illustrative policy is $13.50. Then follows allegations that a company makes its annual return to the state insurance department, and when a policyholder pays a premium including the extra amount for the waiver provision the extra amount is accounted for separately from the premium for the life insurance, and when a premium is waived by reason of the disability of the insured, the amount thereof is required by the form of annual statement to be included as a disbursement at one place and as an item of income at another place in the annual statement made by the company. Then follows an allegation that under G. S. 1935, 40-252, the life insurance company shall pay a tax upon all premiums received at the rate of two percent per annum and that the commissioner of insurance required the company to make return of all premiums waived "under so-called waiver of premium disability riders or endorsements." The commissioner then asserts "that notwithstanding the designation of these benefits as 'waiver of premium for disability,' in truth and in fact the company continues to receive the premium on the life policy by the application of the benefit which is due the insured under the disability feature to the payment of premiums on the life policy." Omitting details, it is alleged that pursuant to demand the company returned information that it had waived payment of premiums totaling $26,634, and the commissioner of insurance assessed a tax of $532.68, which the company paid under written protest to avoid delay in renewal of its certificate of authority to transact business in Kansas; that said payment is held in a special account and is not a part of the general revenue fund of the state. The substance of the relief sought is that the company should be compelled to show cause why said protested payment should not be paid into the general fund, and that the state treasurer should be required to pay it into the general revenue fund.

We need notice only the answer of the defendant New York Life Insurance Company. In its answer the company admitted prac-

tically all the facts alleged in the motion for the writ. It alleged the return of information made by it was on the form which the commissioner of insurance required and not on one which it prepared, and the fact that on such blank waived premiums had to be shown as a "disbursement" or as "income" did not create income in fact. After making detailed allegations as to the form of the annual statement to the commissioner of insurance with respect to the amount of premiums received, reference is made to the portion wherein it was required to show total of premiums waived and not otherwise included and on which the company added an endorsement that the items were credited as payments only to offset the disbursement item of premiums waived. The defendant denied the truth of the commissioner's assertion as quoted above, and alleged the action of the commissioner in compelling it to pay a tax on premiums waived and which it did not collect was illegal, and the tax, having been paid under protest, should be returned to the company. It prayed for relief accordingly.

Shortly stated, the question here is whether the insurance company is liable during a particular year to pay a tax at the rate of two percent under G. S. 1935, 40-252, on an amount represented by the total of premiums waived during the preceding year under the provisions of an insurance policy.

No case where this particular question was the issue has been called to our attention, nor does our research disclose any. Both parties direct attention to phases of *State, ex rel., v. Wilson*, supra, where the question was whether the company was required to pay tax on the amount of the premium stated in the policy, or on that amount less the so-called "dividends" which were applied on the payment, and in which it was held:

"The annual state tax of two percent upon all premiums received by foreign insurance companies on account of their yearly business in this state, imposed by sections 5177, 5467 and 5468 of the General Statutes of 1915, should be computed upon the total amount of premiums collected, retained and devoted to the business of the insurance companies, but any surplus of premiums not so used, but returned to the policyholders or credited to them as abatements or dividends should be excluded from the computation." (Syl.)

Although the parties devote some space to whether the provision for waiver of premium constitutes a separable part of the entire contract, we do not find it necessary to pursue that subject.

As we understand, the principal part of plaintiff's contention is that where disability occurs making the waiver provision effective,

the policyholder receives a benefit measured by the amount of the premium and that benefit is applied to the payment of the premium, or as otherwise stated, the term "waiver of premium" is a misnomer because what actually happens is that the payment of premium is waived because the company already has in its possession the benefits due the insured and from which the payment may be and is paid. In connection with this argument it is said the company short-cuts the matter in its bookkeeping and seeks to avoid payment of the tax on the waived but nevertheless collected premiums. There is nothing in the record to indicate any short cuts in bookkeeping. To the contrary, it appears plaintiff's claim is based in large part on the fact that the company has included the waived premiums as "income" and as a "disbursement" in order that it may make a proper report on blanks, the form of which is determined by the plaintiff (G. S. 1935, 40-225). As we view the matter it is not controlled by the bookkeeping of the company or the report form furnished by the commissioner of insurance.

By express terms of G. S. 1935, 40-401, a life insurance company may include in a policy of insurance a provision for waiver of premiums in the event the insured becomes totally and permanently disabled, and it is such a provision that is here involved. The word "waiver" has been defined repeatedly to mean the voluntary and intelligent renunciation or relinquishment of a known right. See *Eikelberger v. Insurance Co.*, 105 Kan. 675, 681, 185 Pac. 139, *Musgrave v. Equitable Life Assurance Society*, 124 Kan. 804, 262 Pac. 571, *Proctor Trust Co. v. Neihart*, 130 Kan. 698, 705, 288 Pac. 574, and cases cited, and Webster's New International Dictionary, second edition, and Words and Phrases—"Waiver." We must assume the legislature used the word in that sense, and that the provision in the policy had the same meaning. Under appropriate conditions the company renounced or relinquished its right to collect the premium. In view of the statutory language it may not be said that the use of the word "waiver" is a misnomer. Under the circumstances here obtaining, the premium was not paid and there was nothing to which the asserted tax could be attached.

It may be observed that even if it be assumed the premium was paid by application of some benefit belonging to the policyholder, it would be difficult to say that such benefit was essentially different in character from a dividend which, he permits to be applied to reduce the premium which he must pay, and to say the matter was not determined by the rule in *State, ex rel., v. Wilson,* supra.

From what has been said, it is concluded that plaintiff is not entitled to the writ.

Insofar as the defendant company is concerned, there is no contention but that the payment made by it was under a fully sufficient written protest. It appearing that the payment is now held by the state treasurer in a special account and that the state has no right thereto, that officer is directed to repay the same to the defendant company, and it is so ordered.